```
                    UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ALABAMA
                            MIDDLE DIVISION

ANGELA HARPER, et al.         }
                              }
        Plaintiffs,           }
                              }
v.                            }         CV 02-AR-0036-M
                              }
AMERICAN TRANSPORTATION       }
CORPORATION, et al.           }
                              }
        Defendants.           }
```

**MEMORANDUM OPINION**

Before the court is a motion for summary judgment filed by defendants, American Transportation Corporation ("American") and Navistar International n/k/a International Truck & Engine Corporation ("International"). Plaintiffs, Angela Harper ("Ms. Harper") and Timmie Harper ("Mr. Harper")(collectively the "Harpers"), filed this products liability action against American and International alleging that Ms. Harper incurred cervical disc hernias as a result of her use of the door opening system on a school bus manufactured and/or designed by American and International. Specifically, the Harpers allege that the excessive force required to operate the door and/or the position of the door opening system make it defective, and that the defect caused Ms. Harper's injury, creating a collateral cause of action in Mr. Harper for loss of consortium.

**Facts**

On December 12, 2000, at the time of Ms. Harper's alleged injury, she operated a school bus manufactured by American and marketed by International. Ms. Harper testified that she had been assigned the bus approximately four years prior to the alleged "accident." According to Ms. Harper, she had operated this same bus continuously as part of her job up until she was injured on December 12, 2000, except for a few occasions when she missed work, or when the bus was not available. (Ms. Harper's depo. at p. 44-47). She testified that during the relevant time period she always drove the same route, which consisted of sixteen stops in the morning and twenty stops in the afternoon. Except for the occasional day off or when the bus was not available, Ms. Harper testified that she operated the bus 175 days per year. (Harper depo. at p. 45-48, 55). She testified that prior to December 12, 2000, except for minor muscle aches, she had never experienced back pain or discomfort as a result of operating the door opening system in the bus. She further testified that when she reached for the handle of the door opening system, grasping it with the tips of two fingers, and beginning to pull it towards her she felt "a sharp pain in [her] arm, shoulder, neck, and up into [her] head." (Harper depo. at p. 69). Ms. Harper does not claim that her injuries are the result of repetitive motion, but rather that as a result of a design defect in the door opening system, the position of the door

2

control system and/or the fact that it requires excessive force to operate it, her cervical disc was ruptured.

According to Dr. B. J. Stephens, ("Dr. Stephens"), a licensed engineer with a Ph. D. in mechanical engineering[1], the door control system was defective. According to Dr. Stephens an alternative design is feasible whereby the door opening system is moved closer to the operator and cantored in such a way that the operator employs a straight arm pull at ninety degrees to the handle length, thereby reducing the force required to operate the door.[2] Dr. Stephens testified by deposition that in his opinion the door opening system on the bus in question was unreasonably dangerous because it required an excessive amount of force to close the bus door because of its position when it was a simple matter to make the force smaller.

Dr. H. Lenora Hardee ("Dr. Hardee"), a human factors engineer working for International conducted studies of the interaction between the driver of conventional buses with linear door opening system similar to the bus in question in this action

---

[1] Dr. Stephens is on staff at the University of Alabama at Birmingham in the School of Engineering and is a senior member of the Mechanical Design Department.

[2] According to Dr. Stephens, if the handle that operates the door open system is moved eight to ten inches back towards the driver, the force required to open and close the door would reduce the amount of force required to close the door from 148 inch pounds to approximately eight pounds. The average "force of pull" necessary to close the door is 45 inch pounds.

3

manufactured by International. Dr. Hardee testified to the results of a study on the model 3800,[3] which is a conventional bus with a linear door opening system control very similar to that on the bus in question, also manufactured by International. Dr. Hardee testified that in her opinion as an ergonomist and human factors engineer buses that utilize a rotary control mechanism to operate the door opening system are superior to those that utilize the linear control system because the bus operator is not required to lean and use the right shoulder and torso to operate the handle on the rotary controlled system particularly when locking the door open.

The Harpers also submitted the testimony of Robert Douglas ("Douglas"), an engineer and regulatory compliance expert for International. Douglas testified that after Ms. Harper's back problem arose, International modified the door opening system on its line of conventional buses that Ms. Harper was injured on by changing the placement of the door control system. According to Douglas "[t]he door control system is further - - has been moved towards the entrance door and rearward." (Douglas depo. at p. 78). Douglas did not testify that the design change was occasioned by Ms. Harper's injury or was in any way related to it. Douglas testified that the door control system had been

---

[3]Dr. Hardee did not undertake an ergonomic study of the Genesis bus, the bus implicated in the current action.

moved back approximately 9.36 inches, which corresponds to Dr. Stephens recommendation for an alternative design. (Douglas depo. at p. 27). Douglas also testified that prior to this suit International had never received any consumer complaints concerning the door opening system, either before or after the design change.

American and International dispute Ms. Harper's allegation that the door control system on the Genesis bus is defective (a question this court will pretermit as unnecessary to the decision), but assert in any case that the suit must fail as a matter of law because the Harpers cannot establish that the alleged defect in fact caused Ms. Harper's injuries. Dr. Martin Jones ("Dr. Jones") is Ms. Harper's treating physician and neurosurgeon. The Harpers contend that Dr. Jones's testimony, along with a letter that he wrote to the board of education on Ms. Harpers behalf concerning her injuries, prove the issue of causation. Dr. Jones's testimony regarding the relationship between the activity of closing the bus door and Ms. Harper's neck injury was as follows:

> Q. Do you have an opinion on the history provided to you and your education, training and experience with a reasonable degree of medical certainty as to whether or not the physical activity that she described to you opening or trying to close the bus doors precipitated or caused the cervical disc that was found on the MRI?
>
> A. It's possible.

5

Q. Okay. Well, let me ask you this. You found a large rupture on the MRI?

A. Two levels.

Q. Two levels. And certainly you verified it when you opened her up and saw them, you took them out, I'm sure?

A. Yes.

Q. The MRI in other words was accurate. There are two large ruptures at the two levels?

A. Yes.

Q. Is it consistent or reasonable that those ruptured discs at the cervical spine will cause significant pain radiating down the right upper extremity?

A. Yes.

Q. And is it likely that when they rupture, they begin causing pain almost immediately?

A. Mostly likely, yes.

Q. Okay. So is it fair that then one of the things that you were called upon to offer an opinion as to causation, one of the things you want to know about is an accurate verification as to when the pain began with respect to the right upper extremity in this case?

A. Yes.

Q. Okay. And if she did begin to have an immediate onset of cervical spine pain radiating into toward the right upper extremity, would that be consistent that the mechanism of injury that I've described is the cause of the cervical disc?

A. If she had began to have immediate onset of right upper extremity pain when she's operating the school bus?

Q. Right. Yes, sir.

A. It makes it more plausible, yes.

6

(Dr. Jones's first depo. at p. 19).

American and International, however, point out that Dr. Jones also testified that sneezing or nothing at all can cause a disc herniation. (Dr. Jones's first depo. at p. 39). In Dr. Jones's second deposition he testified again that opening and closing the bus door utilizing the door control system *could* have caused the type of injury that Ms. Harper incurred. Dr. Jones testified to the a hypothetical question relating to Ms. Harper's situation as follows:

> Q. Okay. Doctor, she indicated- - assume for me that she felt an immediate onset of symptoms in her mostly in her right upper extremity but in her neck area going into her upper extremity after forcefully or having to close this door in the manner that I've described. Given that background and assuming that the onset of pain immediately following this motion are in conjunction with this motion, would it be reasonable to expect that that type of forceful activity assuming that she had to jerk it to some degree could precipitate or cause an injury into the cervical spine?
>
> A. Yes, it *could*.

(Dr. Jones's second depo., at p. 7-8).

The Harpers point out that Dr. Jones also "agreed" that the greater the stress or trauma on the physical body, especially in the cervical spine, the more likely the opportunity for injury to occur or exists. (Dr. Jones's second depo., at p. 18). Additionally, Dr. Jones responded that in his thinking it was true in the reverse as well. If you reduce the stress on the cervical spine, it is reasonable that you will reduce the

7

likelihood of injury on the cervical spine. Dr. Jones concluded his testimony with the following colloquy:

> Q. Certainly not eliminate it. And as you say, many other things can be causes. But if the idea is to reduce the potential for injury, then reducing the stress on the cervical spine would be the optimum idea. Is that a fair statement?
>
> A. Yes.

(Dr. Jones's second depo., at p. 18-19).

Notwithstanding this colloquy, American and International argue that Dr. Jones's testimony does not resolve the issue of causation in this products liability action. American and International argue that the Harpers cannot show beyond a mere possibility that her disc herniation were caused by a defect in the door control system, and/or that an alternative design would have prevented her injuries. American and International assert that Dr. Jones testified that the door opening system might *"possibly"* or *"could have"* caused Ms. Harper's injury. Furthermore, American and International point out that Dr. Jones testified that it was only *possible* that the alternative design advanced by the Harpers would have prevented Ms. Harper's injury. When questioned hypothetically about whether or not a reduction in force required to open and close the door would have significantly reduced the potential for damage to the cervical spine in Ms. Harper situation, Dr. Jones testified as follows:

> Q. Finally, Doctor, would - - I want you to assume for me that instead of having to utilize about 45 pounds of

8

force there was a design available or a configuration available where Mrs. Harper instead of having to reach and extend as I've described she could have sat upright in her chair, reached out and have retracted the door using only about 8 pounds of force as opposed to 45 pounds of force and would have been able to use her entire hand to grasp the handle to come back toward her. Assuming that to be the case, could you give us a judgment with a reasonable degree of medical certainty as to whether or not that type of motion and activity would have significantly reduced the potential for damage to the cervical spine?

A.  Well, that's a hard question to answer. You're going from 45 pounds to 8 pounds and it sounds like it's an easier pull. But as to whether that would have significantly changed things in her case, I don't know. It's possible that it might have.

Q.  Well, I guess really, Doctor, my question is from a perspective of as a person who's in determining whether or not it would more likely have - - - obviously, she had a disc. Is that fair to say?

A.  Sure.

Q.  But would the probability of having a disc been reduced if she were able to sit upright and utilizing her entire hand, only have to pull with 8 pounds as opposed to grasping and reaching and pulling with 48 pounds of force?

Q.  Would have made a significant difference in your judgment?

Q.  45 pounds rather. Not 48. 45.

A.  The best I'm going to be able to answer that is *maybe*.

Q.  Well, because, you know, you're going — you're decreasing the amount of force necessary. But sometimes cervical disc herniations occur with what appears to be very little force and sometimes they occur for no reason at all you can come up with. So I mean it's not uncommon for me to see somebody that has a huge herniated disc that just felt like they slept wrong on an airplane with no trauma whatsoever. So I can't really say that decreasing the force that's

9

> required to open the door would have necessarily
> changed her situation. It certainly would have been an
> easier job. But to say that it definitely would have
> decreased the possibility of a neck injury, I'm not
> sure that that's true. It might be but I'm not
> positive that it would be true.

(Dr. Jones's second depo., at p. 11-14).

Additionally, American and International point out that on further questioning Dr. Jones responded to the following question regarding the cause of disc herniation:

> Q. Doctor, as I understand what you're saying is if
> someone has a herniated disc because doing an activity
> just because the amount - - it's not necessarily the
> amount of the pull or the amount of the reach that
> causes the herniated disc. Is that what you're saying?
>
> A. Yes. I mean if you could always say that the more
> significant the injury the worse the disc herniation or
> the more likely the disc herniation, then that would be
> one thing. But I've not found that to be the case in
> my practice. And so it's not uncommon for me to see
> people that have disc herniations for which they have
> no explanation for whatsoever. In other words, and so
> just trying to grade the trauma and say that this
> person is at increased risk simply because of the
> nature of what they're doing, it's often hard to do
> that. Otherwise, people that play football would be
> coming in with disc herniations all day long and yet a
> lot of people play football and don't have disc
> herniations. And so it's sometimes just difficult to
> know what's going to cause a disc herniation to occur.

(Dr. Jones's second depo., at p. 15-17, 115-16).

### Analysis

American and International have convinced this court that the subject door control system, as a matter of undisputed fact, is not the legal or proximate cause of Ms. Harper's injuries. American's and International's first argument is that the Harpers

10

have failed to show proximate cause because they have not presented any evidence beyond mere speculation to show that the "excessive" force and/or reach and/or position required to operate the door control system on the bus in question proximately caused Ms. Harper's injuries.[4] The Harpers urge the court to conclude that Dr. Jones's testimony taken as a whole is sufficient to establish that the door control system was the proximate cause of Ms. Harper's disc herniation. The court agrees with American and International on this point. Dr. Jones testified that it was *possible* that the door opening system caused Ms. Harper's disc herniation, or that it *could* have caused her disc herniation. And Dr. Jones agreed that it was *more plausible* that the door opening system was the cause of her herniated disc if the pain coincided with her operation of the door opening system, but the doctor could not and did not say with any degree of medical certainty that a defect in the door control system actually caused the disc herniation. In fact, Dr. Jones testified that "sometimes cervical disc herniations occur with what appears to be very little force and sometimes they occur for no reason at all you can come up with." (Dr. Jones's second depo., at p. 11-14). Dr. Jones also testified that "it's

---

[4]American and International dispute the relevance of Dr. Jones's letter to the Board of Education stating that Ms. Harper's injuries were work related for purposes of recovering under the employer's worker compensation plan.

not uncommon for [him] to see people that have disc herniations for which they have no explanation for whatsoever." (Dr. Jones's second depo., at p. 15-17, 115-16).

In the alternative, the Harpers argue that Dr. Jones's testimony is not necessary to prove causation because this is not a medical malpractice case. The Harpers rely on *Tidwell v. UpJohn Company*, 626 So.2d 1297 (Ala 1993), for the proposition that "the testimony of a medical doctor is not required in order to prove causation relating to [in that case] the effects of drugs or toxins." (Harpers brief at p. 11). American and International argue that the Harpers' reliance on *Tidwell* is misplaced because Tidwell can be distinguished on its facts. American and International assert that *Tidwell* does not stand for the proposition that expert testimony from a doctor is not needed to show causation, but rather for the proposition that other experts trained in the field of medicine can testify on the issue of medical causation. American and International point out that, while the doctor's testimony in *Tidwell* was not necessary to show medical causation, the combined testimony of Tidwell's other two experts, a pharmacologist and a pharmacist, was sufficient to establish proximate cause *only* because the court found that a pharmacologist and a pharmacist were qualified to testify on the issue of medical causation. American and International maintain that the testimony of three engineers, Douglas, Dr. Stephens, and

12

Dr. Hardee cannot establish the issue of medical causation because they are not qualified as experts in any field of medicine. The court agrees. International further points out that *Tidwell* supports its position because the court in that case recognized that the plaintiff has the burden to show "on issues of medical causation a showing of probable cause, rather than possible cause . . . ." *Tidwell*, 626 So. 2d at 1301.

The Harpers next argue that the combined testimony of all their experts is sufficient to establish proximate cause because a jury in this case can decide the issue of causation as a matter of "common sense." American and International respond that it is not a matter of "common sense" to determine what circumstances cause cervical disc herniations and what circumstances do not. American and International argue that if Dr. Jones, an experienced and trained medical physician, cannot determine with any degree of certainty what causes disc herniation, then it cannot be a matter of "common sense." American's and International's arguments are well taken. The court finds that in the present case proof of causation would require expert testimony if not from a physician then from an expert with training and experience in a relevant field of medicine. As a matter of "common sense," something this court likes to think it has, any body movement, including opening a garage door or picking up a pencil can cause a herniated disc. The court finds

13

that Dr. Jones's testimony and the testimony of the other experts taken in isolation or in the aggregate do not make out a case that the door opening system was the proximate cause of Ms. Harper's injuries.

Refusing to quit, the Harpers make a final argument that the medical testimony of Dr. Jones combined with the testimony of Douglas, Dr. Stephens, and Dr. Hardee establishes that the door control system was the proximate cause of Ms. Harpers injuries. Again, the court disagrees. In order to establish proximate cause through the combined testimony of all of plaintiffs' experts, the court would have to be able to combine the testimony in such a way as to make a causal link between the testimony of one expert to that of another.[5] A house of cards is hard to construct.

Although Dr. Stephens testified that in his professional opinion, the door control system was defective because it required an excessive amount of force and/or reach to open and close the door, Dr. Jones testified that the amount of force exerted would not necessarily have changed things in Ms. Harper's situation. Dr. Jones could only testify that it was *"possible that it* [the amount of force] *might have,"* but he could not say

---

[5] For example, if the medical testimony showed that within a reasonable degree of medical certainty that "X" caused disc herniations then the testimony of the engineering experts could create the causal link by establishing that the door control system was defective because it lack characteristic "A".

14

with any degree of certainty that the injury was the consequence of the exertion or undue strain.

Dr. Hardee's testimony is of no help to the Harpers. As an ergonomist and a human factors engineer, she testified that buses that utilize a rotary control mechanism to operate the door opening system are superior to those that utilize the linear control system such as the one in question in the present case because the bus operator is not required to lean and use the right shoulder and torso to operate the handle on the rotary controlled system. The Harpers have not presented any evidence that bending or leaning causes disc herniations, it is a matter of "common sense" that bending or leaning can cause herniation just as stooping or twisting or weight lifting or sneezing. But the fact that Ms. Harper's physical therapy subsequent to her injury includes bending and rotating (Dr. Jones's second depo., at p. 46) proves that bending and rotating are not expected to cause injury.

Mr. Douglas, an engineer, testified that the line of buses like the one that Ms. Harper was operating when she ruptured her disc have since been modified by moving the door control system backward lessening the pull and the amount of force necessary to operate the door control system. Hypothetically, a more ergonomically designed door control system may be beneficial and may reduce the risk of certain types of injuries, even disc

herniations, but in order to establish that a defect in the door control system proximately caused Ms. Harper's injury evidence must exist to prove a causal link between non-ergonomically designed door opening systems and disc herniations.  In other words, no one questions the theoretical proposition that a better mouse trap can be made, but the question is whether that better mouse trap would have prevented a particular injury.  Again, the testimony does not arguably establish a causal link between a door opening system, whether ergonomically designed or not, and disc herniation.  The Harper's wisely do not invoke the doctrine of *res ipsa loquitur*, but do, in effect, want the jury to indulge in a "common sense" speculation venture, akin to *res ipsa loquitur*.

Dr. Jones testified that disc herniations and be caused by sneezing or by nothing at all, and that in his professional opinion and from his experience there was no causal relationship between the amount of force or trauma and a disc herniation or the degree of herniation.  According to Dr. Jones, "*it's not necessarily the amount of the pull or the amount of the reach that causes the herniated disc*."  And its not easy "to grade the trauma and say that this person is at increased risk simply because of the nature of what they're doing. . . Otherwise, people that play football would be coming in with disc herniations all day long and yet a lot of people play football

16

and don't have disc herniations. [In other words] . . . it's sometimes just difficult to know what's going to cause a disc herniation to occur." (Dr. Jones's second depo., at p. 15-17, 115-16).

## Conclusion

Because the Harpers have failed to present evidence from which a reasonable jury could find that the door opening system proximately caused Ms. Harper's disc herniation, summary judgment is due to be granted in favor of defendants.

DONE this _7th_ day of February, 2003.

_/s/ William Acker_

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE